# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**
## NO. 02-13-00401-CR
## NO. 02-13-00402-CR


ROLANDO BOSQUEZ                                    APPELLANT

V.

THE STATE OF TEXAS                                      STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1311910D, 1331026D

----------

## DISSENTING OPINION

----------

Respectfully, I cannot agree with the majority's analysis of Appellant's sole point on appeal or the conclusions that the majority reaches. The State clearly accused Appellant of recent fabrication of his exculpatory testimony. A

statement is hearsay only if it is offered for the truth of the matter asserted.[1]  If, as it appears in the case now before this court, Appellant's prior statement was offered only for the purpose of showing, contrary to the State's position, that the words were spoken during Appellant's earlier exchanges with the officer and not recently fabricated for purposes of trial, then the statement is not hearsay.[2]  If the statement had been admitted only to show that the words were spoken and not for the truth of the matter asserted, we would presume that the jury would follow the trial court's proper limiting instruction.  Both the State and the defense are entitled to rebut an allegation or even a suggestion of recent fabrication.[3]

The *Tome* court involved a young girl who was living with her father but wanted to remain with her mother, who had summer possession of her daughter when allegations of sexual abuse by the father were made.[4]  The issue was whether statements that the child made after she decided she wanted to remain with her mother should be admitted as prior consistent statements because she

---

[1]Tex. R. Evid. 801(d) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[2]*Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App.) ("An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay."), *cert. denied*, 516 U.S. 832 (1995).

[3]*See* Tex. R. Evid. 801(e)(1)(B).

[4]*Tome v. United States*, 513 U.S. 150, 115 S. Ct. 696 (1995).

was already actively trying to switch custodial parents.[5]  The United States Supreme Court concluded that statements the girl made after she had begun her campaign to remain with her mother could not be considered as prior consistent statements because any motive to fabricate was already established and in place.[6]

If we blindly embrace the reasoning of the *Tome* court, without considering the special circumstances, it is difficult to understand how a prior statement could ever be made before the motive to lie arose.  The motive to lie on Monday does not have to be the exact motive to lie on Tuesday but is maybe, nevertheless, a motive to lie.  A prospective defendant questioned by the police may be considered to have a motive to lie simply because he is talking to the police and does not know exactly what the police want but knows it cannot be good for him.  Anytime a parent or teacher walks into a room and asks a youngster what he or she was doing, the answer almost inevitably will be "Nothing."  The motive to lie is commonly presumed in an encounter between a police officer and a suspect, between an errant spouse and an innocent spouse, between a youngster and a parent or teacher, or between a police officer and an angry complainant.  The accusation of recent fabrication includes an accusation of fabrication.

---

[5]*Id.* at 156–58, 115 S. Ct. at 700–01.

[6]*Id.* at 156, 159, 115 S. Ct. at 700, 702.

3

The Texas Court of Criminal Appeals recognizes that it is not necessary for a prior consistent statement to have been made before *all* motives to fabricate have arisen: "The rule requires merely that the witness' prior consistent statement be offered 'to rebut an express or implied charge against him of recent fabrication or improper influence or motive.'"[7] I would hold that the video of Appellant's prior exchange with the officer is a prior consistent statement offered to rebut the State's charge of recent fabrication and that the trial court abused its discretion by excluding it. Otherwise, rule 801(e)(1)(B) can rarely if ever be invoked by anyone who fears being accused of anything, including prosecution for a crime he did not commit.[8]

The majority states, "Because there was no allegation of recent fabrication in the June drug case, the video was hearsay; thus, the trial court did not abuse its discretion by denying Appellant's request to introduce the video."[9] There was one stop of Appellant's vehicle in January. Although Appellant was charged both with possession of a firearm and with possession of a controlled substance, he was charged in a single indictment, and the State chose to try both offenses in a single trial. In June, Appellant was again arrested for possession of a controlled substance. The State chose to try that case along with the two January cases.

---

[7]*Dowthitt v. State*, 931 S.W.2d 244, 264 (Tex. Crim. App. 1996).

[8]*See, e.g.*, *Morton v. State*, 761 S.W.2d 876, 879 (Tex. App.—Austin 1988, pet. ref'd).

[9]Majority Op. at 9.

4

The majority concedes that the prosecution attacked Appellant's general credibility but states that his credibility was specifically attacked only in the weapons case. Officer Bucy pulled Appellant over in the January stop. Officer Tobar pulled Appellant over in June. Yet this is the exchange that occurred at trial:

Q [by the State]: And it's funny you never told Officer Tobar that the driver of the white truck shot at you, did you?

A [by Appellant]: I did, ma'am. That's the first words that came out of my mouth.

[State]: May I approach the witness, Your Honor?

THE COURT: Yes.

Q. Let's look at your written statement. I want you to show me in this written statement where you say that he shot at you.

A. It's on the other sheet.

Q. Okay. Point it out to me.

A. It says right here. I told the officer that he had a gun.

Q. Does that say he shot at you?

A. Well, he had a gun, and that's what the fire came from.

Q. Do you actually admit in here that you shot?

A. After he shot at me, yes, I did, ma'am.

Q. But there's nothing in here about him shooting at you. Wouldn't you agree with that? Anywhere.

A. No, I thought I did write it in there. This happened so fast.

5

Q.  In fact, this is the first time we've heard of the other person shooting at you, right?  Isn't that right?

A.  No.  I—I told the officer that he shot at me first verbally when he had me get out the vehicle.

Q.  You didn't see Alicia Happy put the dope in the car on your side of the car when you got out?  You didn't see that?

A.  I was getting out of the vehicle, ma'am, following instructions.

Q.  So you didn't see her do it?

A.  No, ma'am.

Q.  So you want this jury to believe you're telling the truth, that you're credible, despite your criminal history and despite telling them—leaving something virtually important out of your statement.  You want them to believe that out of two different times dope was found in your car, that other people planted it?

A.  Yes, ma'am.

The State objected that admitting the video of Appellant's arrest and interaction with Tobar would be "improper bolstering" and inadmissible hearsay. Appellant responded that the purpose of the in-car video was to rebut the allegation of recent fabrication.  Both the prosecutor and Appellant seem confused about who stopped Appellant in January; it was Bucy, not Tobar. When defense counsel asked the trial court to admit the video of Tobar's interaction with Appellant, he clearly explained that

the constant theme throughout the cross-examination was, "These are things that we haven't heard before.  You want the jury to believe this?"

. . . .

Well, it's, again, at the time of the arrest.  He explained himself to the police officer.

6

. . . .

He was explaining that he just picked the car up from J.P. just like he told the jury.

I agree with the majority that the exhibit actually offered was connected to the June drug offense. I do not agree with the majority that the State limited its accusations of fabrication to the January drug case. The State was properly allowed to offer testimony regarding Appellant's oral exchanges with Tobar regarding the source of drugs in his truck. And the State was allowed to characterize Appellant's testimony at trial as lies. Defense counsel clearly stated that Appellant had told Officer Tobar the same thing at the time of his arrest. That is a request to offer a prior consistent statement in the June drug case. Appellant had the right to have the jury watch the video that showed what he actually said in the exchange with Tobar, not for the truth of the statements to Tobar but for the purpose of showing that Appellant made the statements. He was not required to sit back and accept the State's characterization of events that were captured on video.

Because I believe that the trial court committed reversible error by excluding the video, I respectfully dissent.

/s/Lee Ann Dauphinot

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: September 25, 2014

7