BECKWITH, Associate Judge,
dissenting:
The government in this case sought to admit a prior statement of Alexsandra Green to Detective Derek Bell the day of the incident that was consistent with certain statements she made in the grand jury two weeks after the incident that the government wanted the trial court to. credit as true. The government’s theory of relevance for this prior consistent statement was that it “rehabilitated” Ms. Green after she was impeached with an inconsistent statement made to Detective Ricks a day after the incident. And the government’s theory for why the prior consistent statement rehabilitated her — that is, why it met the force of the impeachment by inconsistency — was not that it showed that the statement was not truly inconsistent, but simply that it tended to show that Ms. Green was credible because “she’s been consistent with her story.” In other words, her repetition of the story implied its veracity. Because this fallacy is precisely what the general rule of exclusion for prior consistent statements is designed to prevent, the statement was, in my view, erroneously admitted, and I respectfully dissent from the majority’s contrary holding.
Federal Rule of Evidence 801(d)(1)(B) and its substantially verbatim counterpart in the District, D.C.Code § 14-102 (2012 Repl.), codify the common law rule that prior consistent statements, while generally inadmissible,[1] are admissible when they rebut a charge of “recent fabrication” and were made before the motive to fabricate arose. See Tome v. United States, 513 U.S. 150, 156, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). While the common law rule only admitted such statements for “rehabilitative” purposes, Rule 801(d) and § 14-102 label them as “non-hearsay” and admit them for their truth. In McClain v. United States, 460 A.2d 562 (D.C.1983), this Court held that an attack on a witness’s testimony based on an alleged inability to remember the incident, in the absence of “any specific suggestion of fabrication,” was not a charge of recent fabrication for § 14-102 purposes. Id. at 570. Here, Mr. Worthy’s attack on the accuracy of Ms. Green’s grand jury testimony was an attack on her memory, not a suggestion that she had a particular motive to fabricate— to deliberately make up — her claim to the grand jury that Mr. Worthy tried to kill her. It thus seems clear that Ms. Green’s statement is not admissible for its truth under § 14-102.
There does not appear to be any other provision of D.C. law that would allow admission of Ms. Green’s prior consistent statement to Detective Bell for its truth. The Supreme Court in Tome noted that its holding (that prior consistent statements are not admissible under Rule 801(d)(1)(B) unless they predate an alleged motive to fabricate) theoretically did not preclude admission of prior consistent statements not meeting the strictures of Rule 801(d) *1100 for their truth under some other provision of federal law, such as Federal Rule of Evidence 807, the “residual” hearsay exception. Tome, 513 U.S. at 158-59, 115 S.Ct. 696. But this court has not yet recognized such an exception, Myerson v. United States, 98 A.3d 192, 195 n. 3 (D.C.2014), and even if we had, it would surely be used — as is the federal rule — “very rarely, and only in exceptional circumstances.” [2]
The government alternatively claims, and the majority holds, that even if Ms. Green’s statement is not admissible for its truth, it is admissible simply for “rehabilitation” purposes. That is, the statement’s relevance is not to show that its contents are true, but merely to show that Ms. Green is credible, by meeting the force of some specific line of impeachment tending to show she is not credible. It is worth noting at the outset that some federal circuits addressing the issue after Tome have held that prior consistent statements are not admissible for any purpose — even simply so-called “rehabilitative” purposes — if they do not meet the strictures of Rule 801(d). In so holding, these courts point out that any fine distinction between these two concepts — a prior consistent statement coming in for its truth and merely for “rehabilitation” purposes — is illusory. See, e.g., Simonelli, 237 F.3d 19 (1st Cir.2001) (noting a circuit split on this issue and the reasoning underlying it). It is nonetheless true that the “majority view” in the federal courts is that prior consistent statements not admissible for their truth under 801(d) might still be admissible not for their truth, but simply to rehabilitate a witness. And the recent proposed amendment to Rule 801(d), cited by the majority here, seems to validate that view.
There is no such proposed amendment to § 14-102, and we have never had occasion to address the issue that has split the federal courts after Tome — that is, whether prior consistent statements, even if not admissible under § 14-102, might still be admissible for a non-hearsay purpose, to “rehabilitate” a witness, and if so, under what circumstances such rehabilitation would be allowed other than the rule of completeness.
While this is an interesting question, we need not resolve it here, because Ms. Green’s statement is not relevant to meet the force of her impeachment other than through the “repetition implies veracity” inferential chain. Even under the majority federal view, a prior consistent statement is not admissible to “rehabilitate” a witness simply because she has been attacked; the statement must have some relevance in meeting the force of a specific line of impeachment that goes beyond simply “repetition implies veracity.” The typical context in which consistent statements are offered to rehabilitate a witness for a reason other than to rebut a charge of recent fabrication is the rule of completeness. See, e.g., Simonelli. But one could imagine other contexts. For example, as Justice Breyer noted in dissent in Tome, a “postmotive” statement might be relevant to rebut a charge of recent fabrication based on a motive to lie “when the speaker made the prior statement while affected by a far more powerful motive to tell the truth.”[3] 513 U.S. at 172, 115 S.Ct. 696 (Breyer, J., dissenting).
*1101 Another exceptional context in which a prior consistent statement should arguably be admitted for “rehabilitative” purposes, even if not admissible under § 14^102, might well be where the statement meets the force of an impeachment on grounds of faulty memory or perception. The defense came dangerously close here to justifying admission of the statement on such a ground, were we to recognize it as a valid ground for admission. The defense intimated that Ms. Green’s grand jury testimony was affected by her ingestion of Seroquel, an antidepressant that Ms. Green acknowledged affects her memory. If the government’s theory of relevance in introducing Ms. Green’s statement to Detective Bell — which was given at a time when Ms. Green was not under the influence of Seroquel — was that it showed that Ms. Green’s claim that Mr. Worthy had threatened to kill her was not simply a product of a Seroquel-induced haze, then our task on appeal might be rendered more difficult.
Here, however, the government’s theory of relevance was simply that the prior statement tended to show that the grand jury testimony was credible because the two stories were similar. And that theory is undisputedly invalid.[4] The majority states that the “relevance of the prior consistent statement that was also made to the police even closer in time to the incident borders on being self-evident.” Ante at 1098. Yet the timing of the statement does not change the fact that the theory of relevance is ultimately nothing more than the “repetition implies veracity” fallacy that the general rule of exclusion for prior consistent statements is meant to prevent — that is, a contention that the witness said the same thing before the inconsistency that she later said to the grand jury.
To the extent the majority suggests that a prior consistent statement is admissible for rehabilitative purposes so long as the witness’s credibility has been challenged “by impeachment with a prior inconsistent statement,” ante at 1098, this cannot be the law. Such a broad exception would swallow the general rule of exclusion of prior consistent statements. While some states have chosen to explicitly allow prior consistent statements for this purpose, see, e.g., Cal. Evid.Code § 791 (allowing admission of prior consistent statements when they predate either a prior inconsistency or an alleged motive to lie), the District has not.
I also decline the government’s invitation to create a per se harmlessness rule for the erroneous admission of prior consistent statements in bench trials. Here, Ms. Green was the only witness to the alleged threat, her descriptions of that offense were contradictory, and the defense impeached her at every turn. The government’s rebuttal argument then relied heavily upon Ms. Green’s prior consistent statement to portray her as credible and to *1102 downplay the inconsistencies. The prosecutor stated that Detective Bell’s testimony showed that “Ms. Green was consistent then. She was consistent with what she told officers very short in time after the incident happened that morning with what she told a mere two or so weeks later in grand jury.” As we have often stated, “[a] prosecutor’s stress [upon] the centrality of particular evidence in closing argument tells a good deal about whether the admission of the evidence was meant to be, and was, prejudicial.” Morten v. United States, 856 A.2d 595, 602 (D.C.2004) (quotation marks omitted).
More significantly, the trial court explicitly relied upon the prior consistent statement in its verdict, crediting Ms. Green’s grand jury testimony that Mr. Worthy “threatened to kill her” in part because “this is the story she gave the police,” noting that “[i]t was consistent, as the officer also testified, that that’s what she related to him, Officer Bell,” and concluding in the very last sentence of its findings that the government had proved beyond a reasonable doubt that Mr. Worthy committed the offense of attempted threats “by saying ‘I’m going to Mil you’ ” — the words she used in the grand jury testimony that, in the court’s view, had been so bolstered by the prior consistent statement. In other appeals from bench trial convictions, we have readily held that a trial court’s evi-dentiary error was not harmless where the court specifically relied upon the erroneously admitted hearsay in convicting the defendant. See, e.g., In re L.L., 974 A.2d 859, 866 (D.C.2009) (finding that the erroneous evidentiary ruling required reversal “[bjecause the trial court expressly referred to the substance of the statement when explaining its decision that [the defendant] was guilty”); Jones v. United States, 17 A.3d 628, 684 (D.C.2011) (concluding that because the trial court, “in adducing appellant’s guilt,” relied on hearsay testimony that “never should have been admitted into evidence,” the judgment “undoubtedly was substantially swayed by the error and ‘it is impossible to conclude that substantial rights were not affected.’”) (citation omitted). At least with respect to the attempted threat charge, the government has not established that it is “highly probable that [the] error did not contribute to the verdict.” In re Ty.B., 878 A.2d 1255, 1267 (D.C.2005) (citation and internal quotation marks omitted). Julius Worthy’s conviction on that count should be reversed.

. See, e.g., United States v. Simonelli, 237 F.3d 19 (1st Cir.2001) (noting that before Tome, most federal courts had held that Rule 801(d) did not "displace the common law rule that prior consistent statements could be introduced in certain situations to rehabilitate a witness,” which "[ujsually” meant situations where the statement was necessary for completeness).

. Advisory Committee Note to Federal Rule of Evidence 807.

. Imagine, for example, a case in which a mother reports to a doctor that her child was abused by a babysitter (where, say, the truth is important to save the child’s life). In a subsequent criminal trial of the babysitter for child abuse, the mother testifies that she saw the babysitter hit the child. The defense claims the report is false, motivated by a *1101 desire not to pay the babysitter. It would seem appropriate that the government would be able to introduce the mother’s prior consistent statement to the doctor, not for its truth, but to meet the force of the suggestion that her current testimony is primarily motivated by a desire not to pay the babysitter.

. The majority properly declines to embrace the government’s argument that this statement could also be admissible to show that the statement to Detective Ricks the next day — that Mr. Worthy did not do anything to her — was not actually inconsistent with her grand jury testimony. It also properly rejects the government’s invitation to create what in essence is an exception to the hearsay rule for prior consistent statements of a domestic violence victim. Some states have such a rule— California created one shortly after the OJ. Simpson verdict, see, e.g., Cal. Evid.Code § 1370 — but' the District of Columbia does not.