**Juana GONZALEZ, et al., Plaintiffs,**

**v.**

**DIGITAL EQUIPMENT CORPORATION, Defendant.**

Nos. 92–CV–5230 (JBW), 93–CV–5246 (JBW), 94–CV–1427 (JBW), 94–CV–3502 (JBW), 94–CV–5789 (JBW), 97–CV–7165 (JBW) and 98–CV–1100 (JBW).

United States District Court, E.D. New York.

June 8, 1998.

Kenneth J. King, Christopher P. Johnson, Beth D. Jacob, Charna L. Gerstenhaber, Lawrence H. Cooke II, Brobeck, Phleger & Harrison, New York City, for Defendant.

Michael J. Curtis, Richard A. Solomon, Lipsitz, Green, Fahringer, Roll, Salisbury, & Cambria, Buffalo, NY, Steven Phillips, Daniel Goodman, Stephanie Lannigan Bross, Levy Phillips & Konigsberg, New York City, for Plaintiffs.

*MEMORANDUM and ORDER*

WEINSTEIN, Senior District Judge.

*Table of Contents*

I. Facts ......................................................196

II. Law ......................................................196
    A. Authenticity ........................................196
    B. Relevance ..........................................197
    C. Hearsay ............................................199
        1. Non-Hearsay......................................199
        2. Exceptions.......................................201

III. Conclusion ..............................................202

Defendant's motion to exclude evidence in this case appears, superficially, to be supported by the Second Circuit decision in *George v. Celotex Corp.,* 914 F.2d 26 (2d Cir.1990). In fact, *George* is not, and should not be, a reason to exclude important evidence in this mass tort repetitive stress injury trial. Defendant's motion to exclude is denied for the reasons set forth below.

I. Facts

Plaintiffs claim that their upper body, arm, or hand problems were caused by their repeated use of defendant's keyboards and that they were not appropriately warned by defendant of the possibility of such injury. The plaintiffs have included on their list of proposed exhibits documents and videotapes of keyboard manufacturers other than defendant Digital Equipment Corporation. These manufacturers include American Telephone and Telegraph, International Business Machines (IBM), and Apple Computers. The materials indicate that other keyboard manufacturers were aware, at critical dates, of possible ergonomic problems with computer keyboards. Some of the written and video materials were designed to protect users of keyboards within the respective companies. Others were being developed for customers and users of the companies' keyboards, attempting to educate them about possible ergonomic dangers.

There are two videotapes at issue. One video, "Health & Comfort Using Visual Displays," was produced by IBM in 1991. It is thirteen minutes in length, and it addresses "comfort disorders." The introduction to the video indicates that it was produced by IBM to demonstrate that IBM had done extensive research on these issues and reached the conclusion that its keyboards were safe. The video emphasized that the adjustment of a work area—chair height, lighting level, foot rest height, screen angle, and keyboard position—is the decisive factor in whether a keyboard user will experience "comfort disorders."

The other video, "The Ergonomic Keyboard," was produced by Apple Computer in 1991. It is approximately eleven minutes in length. It discusses the possible problems arising from computer keyboard usage and Apple's development of "solutions." The introduction to the video warns: "Apple Internal Viewing Only."

The internal documents and videos apparently were not made available to defendant or other competitors. Counsel for defendant states that he has been unable to find any Digital document suggesting that these materials were known to Digital until the present litigations began. This statement is accepted as true for purposes of this memorandum and order.

Defendant objects to admission of these exhibits on the grounds that 1) there is no foundation; 2) they are irrelevant, prejudicial, and cumulative; and 3) they contain hearsay about the possible adverse effects of keyboards on users. These objections are overruled. The materials will be admitted for the limited purposes indicated below.

II. Law

  A. Authenticity

  ■ Authentication of evidence is a condition precedent to admissibility. Fed.R.Evid.

901. It "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). The parties agreed at oral argument that the contested documents and videos allegedly produced by IBM, Apple, and others were, in fact, produced by those companies. Nevertheless, defendant argues that plaintiffs have not produced witnesses to authenticate the documents and videos.

The authentication issues with respect to both the videos and the internal documents are essentially the same. *See generally* John H. Mansfield, et al., Evidence, 688–89 (9th ed.1997) (admissibility of materials produced with modern technology); *cf.* Gregory P. Joseph, A Simplified Approach to Computer–Generated Evidence & Animations, *in* Reference Materials for Federal Judiciary Television Network Broadcast on Computer–Generated Visual Evidence (Federal Judicial Center, June 1998).

Although plaintiffs arranged to depose people from the various computer companies to authenticate the documents and videos, these expensive efforts are redundant. Authentication can be accomplished by assessing the appearance, content, and "other distinctive characteristics" of the exhibits, in conjunction with the circumstances. Fed. R.Evid. 901(b)(4). All the materials, including the videos, are clearly labeled as Apple's, IBM's, and other corporations' materials developed by these companies for their own use. The materials were produced in a manner and contain information that makes it apparent that they are internal documents of the respective companies. They deal with critical problems of safety being considered by keyboard producers and scientists at the time in a way consistent with the then generally available technical information. Some of the material is marked "confidential," with limited internal circulation to persons with a need to know.

There is nothing in the documents or videos, nor is there any circumstantial information, that would indicate the materials are not what they purport to be. The depositions, though redundant, support this finding. Authentication has been fully established. *See* Fed.R.Evid. 901.

**B. Relevance**

Evidence must be relevant in order to be admissible. Fed.R.Evid. 401, 402. "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. Defendant contends that the documents and videos of other keyboard manufacturers are not relevant because they are internal materials which were not seen by defendant until recently.

Evidence of the current "state of mind" of large producers in this industry is relevant. It allows the inference that, given the then state of the art, members of the industry as a whole had, or should have had, the same "state of mind" with respect to possible damage to users that needed to be considered by each of the manufacturers even though they were operating independently.

In *George v. Celotex Corp.*, 914 F.2d 26 (2d Cir.1990), an asbestos products liability case, the defendant challenged the relevance of a decades-old asbestos report the defendant had never seen. The court of appeals for the Second Circuit held that the report was relevant to the issue of the defendant's notice of the possible dangers of asbestos even though the defendant had not seen the unpublished report because the jury could use the report in deciding whether the defendant "should have known of the information comprising the contents of the report." *Id.* at 28–31. In similar cases, reports and documents of manufacturers not seen by other manufacturers have been held to be relevant for purposes of showing that possible dangers of a product were discoverable by the manufacturer either before or at the time of the plaintiff's injuries. *See, e.g., Dunn v. HOVIC*, 1 F.3d 1362, 1369–70 (3d Cir.1993); *King v. Armstrong World Industries, Inc.*, 906 F.2d 1022, 1025 (5th Cir.1990); *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 465 (5th Cir.1985) (minutes of committee meetings of Asbestos Textile Institute admissible to show "state of the art," absent showing that defendant either was a member of the institute or had knowledge of its meetings); *cf. In re New York Asbestos*

*Litigation,* 847 F.Supp. 1086, 1095 (S.D.N.Y. 1994) (regarding "state of the art" defense: "Scientific discoverability, rather than actual knowledge, is the standard by which the relevancy of such evidence is to be judged."), *aff'd in part and vacated in part,* 72 F.3d 1003 (2d Cir.1995), *vacated on other grounds,* 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996).

A manufacturer is held to the knowledge of an expert in its field. *See, e.g., George v. Celotex Corp.,* 914 F.2d 26, 28 (2d Cir. 1990). It "has a duty to keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imparted thereby." *Id.* (internal citations omitted). The documents and videos are relevant.

Following this circumstantial route, it is not necessary for the jury to believe in the truth of the statements in the material that there were dangers in order for the materials to be relevant. The jury can assess whether a reasonable company, given what should have been known by manufacturers generally, would investigate possible dangers to determine the reality of the risks. The hearsay hypothesis is not needed for relevancy. Other evidence will, of course, be needed to show that there was, in fact, a danger in use of the keyboards.

While relevant evidence is admissible, it can be excluded if "its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403 (emphasis added). This is a balancing test. For "relevant evidence to be excluded ... the imbalance must be substantial." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 151 (2d Cir.1997). A trial judge is afforded broad discretion in a Rule 403 decision since so much depends upon critical perceptions of the jury's reaction to day-to-day dynamics of a trial not evident from the printed record. *See, e.g. United States v. Abel,* 469 U.S. 45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

Evidence that supports liability is "prejudicial" to the defendant. Unfair prejudice under Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (quoting Fed.R.Evid. 403 Advisory Committee Notes, 28 U.S.C.App., p. 860 (1972)); *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 151 (2d Cir.1997) (same).

Defendant maintains that the videos in particular are prejudicial since they reveal many of the defendant's competitors' experts detailing possible risk factors in the use of keyboards. It argues that it is likely that the jury, even if properly instructed, will use this information inappropriately to assess whether the keyboards did present dangers and could have been produced and marketed more safely. Defendant contends, moreover, that jurors give unfair weight to videos.

These arguments might have merit in a short trial with little other evidence. In the instant trial, running over many weeks with hundreds of documents, scores of witnesses, many experts, extraordinarily able counsel, and a mature jury, there is almost no probability of jury abuse. While the videos might be used by the jury improperly, a limiting instruction to the jury, here given repeatedly, specifying the purpose for which they can use the videos is sufficient to ensure that there will be no unfair prejudice to the defendant. *See* Advisory Committee Notes, Fed. R.Evid. 403, 28 U.S.C.A. (1972) ("consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction").

There is always some danger that the jury will ignore the court's instructions about the limited way in which evidence should be considered. Juries in the product liability cases tried in this court have been responsible. The "runaway jury" concern is not substantiated.

Jurors today are blasé about the kinds of technical videos proposed to be introduced. *See generally* John H. Mansfield et al., Evidence 128–29, 164–65 (9th ed.1997). They appear to be more attentive to live witnesses and to the drama of cross-examination. De-

fendant has made no showing that the jurors will attach inappropriate import to a video resulting in unfair prejudice outweighing its probative value. *See generally Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 259 n. 6 (5th Cir.1985) (discussing videotaped depositions).

In assessing whether evidence is prejudicial under Rule 403, the court needs to weigh the prejudice of the proffered evidence against the prejudice of other possible evidence that can be substituted. *See Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 651–52, 136 L.Ed.2d 574 (1997). Defendant suggests that a stipulation of notice here is an alternative, but it has offered no stipulation despite repeated suggestions by the court that it do so. *Cf. Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 651, 136 L.Ed.2d 574 (1997) (limited power to compel stipulations).

Defendant maintains that its own documents and testimony indicate that they were actually aware of the risks alleged regarding keyboards, so that plaintiffs' proffered internal documents and videos of other keyboard manufacturers are cumulative. This position is not compelling. The problem of notice is critical to plaintiffs' case. The evidence is not cumulative in the absence of a stipulation. The plaintiffs are entitled to present appropriate evidence under these circumstances. *Cf. Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 652, 653, 136 L.Ed.2d 574 (1997) ("prosecution is entitled to prove its case by evidence of its own choice").

## C. Hearsay

Hearsay is defined to include *some* out-of-court statements offered "to prove the truth of the matter asserted." Fed.R.Evid. 801(c). *Some* evidence is excluded as hearsay because the traditional bases for determining credibility—oath, demeanor, and cross-examination in the presence of the jury or by permitted depositions—are not available when the out-of-court declaration is proffered. *See Tome v. United States,* 513 U.S. 150, 163, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). Unless otherwise allowed by numerous hearsay exceptions or by the necessity of improving the truth-finding process as required by the Rules of Evidence, hearsay is inadmissable. Fed.R.Evid. 802.

Defendant maintains that, even if the internal documents and videos are relevant and not cumulative or prejudicial, they are hearsay not within an exception and therefore must be excluded. While, as shown below, it would be appropriate to allow this evidence to be utilized to prove the truth of the assertions in it, it is preferable to provide limiting instructions putting plaintiffs to proof of dangers by conventional expert and other testimony. This approach will better focus the jury's attention on the separable issues of notice of possible dangers and dangers in fact.

### 1. Non–Hearsay

■ If evidence that would otherwise satisfy the definition of hearsay is offered not for the truth of the matter asserted—injuries to users—but is offered instead to show that a manufacturer was on notice of possible hazards and possible remedies regarding a product, it is, as already noted, not hearsay. *See George v. Celotex Corp.,* 914 F.2d 26, 30 (2d Cir.1990) ("an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay").

The internal materials of other manufacturers are not hearsay. They are being admitted only to show that defendant should have been aware when their competitors were—and should have begun to then assess the potential dangers of keyboards. This use involves inferences about the state of mind of the competitors and of the defendant. Defendant contends that this purported use for the internal materials is pretextual, and that plaintiffs intend to use the materials for hearsay purposes. For the documents and videos to have any value to plaintiffs, defendant maintains, the jury would have to assume that the included information that keyboards have risks that need to be addressed is true; otherwise there would be no notice value to these materials because there would be nothing of which to have notice.

Defendant argues that its position is supported by *George v. Celotex Corp.,* 914 F.2d

26 (2d Cir.1990). In *George,* however, the questionable unpublished report which the defendant had never seen was admitted under the ancient document hearsay exception. *George v. Celotex Corp.,* 914 F.2d 26, 30 (2d Cir.1990). The court did not need to determine whether the report could be admitted as non-hearsay, offered not to establish the veracity of the information contained in the report, but to establish notice, since it found that the document met the rule of "ancient" documents. *See* Fed.R..Evid. 803(16). It was therefore unnecessary in *George* to consider the nature of a national mass tort litigation or the problems faced in the instant litigation.

Manufacturers of computer keyboards are not individual artisans, laboring in some suburban garage. Rather, they are significant international entities, employing people in many countries and selling keyboards worldwide. Defendant had well over 100,000 employees all over the world. It retained both its own scientists and engineers and consultants to the entire industry.

In this mass torts area, manufacturers arguably should be expected to rely on information causing competitors to be concerned about safety problems. The procedures and activities of other manufacturers can be viewed as a benchmark for comparison. Such material should be admitted in mass torts cases despite any hearsay rule argument. The law is both protecting consumers dealing with huge conglomerates, when the consumer is often blind to dangers, and ensuring due process for defendants. Admissibility is preferred.

While admissibility does not depend on this point, it is unlikely that at least some of the employees of Digital, a major producer in this area, were not aware of the actions of their competitors, as manifested in the contested documents and videos. Dr. Charles Abernathy, senior consultant engineer for Digital, testified that Digital belonged to the Center for Office Technology and CBEMA, the American Computer Business Manufacturers Association. Other major American manufacturers, including those whose materials are now sought to be introduced, were members. Dr. Abernathy was also a member of the American National Standards Institute Human Factors Society (ANSI HMS–100) committee with other representatives from IBM, Burroughs/Unisys, Xerox, Hewlett Packard, and other huge computer equipment manufacturers. The committee promulgated an industry standard with regard to, among other things, height and slope of keyboards and their proper design and usage to avoid injury to the user. Dr. Abernathy also knew of some of the activities of the Australian Computer Trade Association. Other employees of the defendant had wide scientific and technical contacts outside of Digital.

It can be assumed for purposes of admissibility that, at industry conferences, medical and science seminars, academic symposia, and trade shows, a pool of experts became aware of what each was doing about safety. This is how high technology and science in a modern society work: many are on knowledge's cutting edge, aware of the current state of the art, competing with each other to be first with an innovation. *See generally* Margaret Berger, *Eliminating General Causation: Notes Towards a New Theory of Justice and Toxic Torts,* 97 Col.L.Rev. 2117 (1997) (assessing what corporations often know through internal research in scientific areas); *cf.* Elizabeth Nowicki, *Competition in the Local Telecommunications Market: Legislate or Litigate,* 9 Harv.J.L. & Tech. 353, 357–58 (1996) (discussing technological evolution in telecommunications and innovation exchange between industries). It is one of the reasons why people all over the world are working to solve the same problems at the same time and producing the same products using essentially the same methods.

Where there are substantial indications that important members of an industry think that there is a problem, it behooves all members of the industry to consider whether they should have the same state of mind. If such a collective industry state of mind does exist and the defendant is unaware of this thinking or does not have a similar state of mind, that may be taken as an indication of negligence. In this and in many mass tort cases manufacturers are producing for consumers who depend on them, and who do not have the

industrial and scientific background to protect themselves. Irrespective of the truth of the videos and the documents in question, they are admissible to establish the state of mind—concern over possible dangers—of those in the industry. Hearsay exclusion rules should not be permitted to limit the search for the truth in possible torts, subjecting hordes of consumers to possible injury.

## 2. Exceptions

■ Even if the internal documents and videos proffered here by plaintiffs were hearsay, they would be admissible under the Federal Rules of Evidence "residual exception" to the general hearsay inadmissibility rules. The "residual exception" provides that, if notice is given to the adverse party sufficiently in advance of trial, hearsay which has circumstantial guarantees of trustworthiness equivalent to that of hearsay excepted under other Federal Rules of Evidence can be admitted. *See* Fed.R.Evid. 807. Specifically, a court must determine that "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence." Fed.R.Evid. 807.

Defendant has had notice for an extended period of time that this evidence was proposed. It was fully aware of this intention even well before the last trial of similar issues, a year and a half ago, when this evidence was also offered. The internal videos and documents offered as evidence of a material fact satisfy Federal Rule of Evidence 807(A), and the internal materials are highly probative in satisfaction of 807(B).

The general interests of justice and the standards of trustworthiness of the other hearsay exceptions are met in this case, in satisfaction of 807(C). The fear of fabrication or of inaccuracies inherent in much hearsay is unfounded. The documents and videos, created for legitimate business reasons, are less likely to have been fabricated than would be testimony from a live witness.

With respect to inaccuracies, the videos and documents are likely to be more accurate than a live witness would be at this point because on their face they were created internally and with great care. Time has passed since the documents and videos were created, so a live witness' recollection of the information that the documents and videos address and of critical time sequences might have faded or be contested at unnecessary length. Timing of concern and notice is almost always difficult to fix in these cases. Inability to cross-examine is not a particularly compelling concern with regard to the internal documents and videos of other manufacturers. Defendant may call its own expert or those who created the materials as witnesses to refute the contentions of notice.

In comparison to the potential for truthfulness inherent in evidence admissible under other hearsay exception requirements, the potential for truthfulness here is at least equally high. Certainly the video has more probative weight and credibility than that ensured by the ancient document rule (Fed.R.Evid. 803(16)) relied upon in *George v. Celotex*. If this video were "ancient," it would not be more relevant or persuasive than it is. As compared to "records of regularly conducted activity" (Fed.R.Evid. 803(6)), the documents and videos are trustworthy. They have characteristics of recordkeeping similar to those of business-records. They were prepared by a company for a legitimate business reason with no motivation to fabricate, based in large part on information generated internally.

This information could go to a jury without limitations in keeping with the principles underlying the Federal Rules of Evidence. *See* Fed.R.Evid. 102 (rules "shall be construed to ... the end that the truth may be ascertained and proceedings justly determined"). A rule of evidence that would exclude this material from jury consideration is suspect as counterintuitive and a clog on truth finding. Nevertheless, for reasons already stated in Parts B and C. 1, *supra*, this evidence will be admitted for non-hearsay purposes only with appropriate instructions from the court.

## III. Conclusion

The documents and videos cannot be excluded en mass. They will be admitted with instructions to the jury to treat them as hearsay, not to consider them for the truth of the matters asserted, but only to show the state of mind of other producers in the industry on the issue of notice. More specific objections to each exhibit will be considered when the offer is made.

SO ORDERED.

### *Addendum By The Court*

 Following the issuance of the above memorandum, defendant, at the court's suggestion, agreed to the following stipulation:

1) Digital stipulates that by 1991 it had notice that individuals were making claims that typing on a keyboard was causing adverse upper extremity health conditions.

2) Digital also stipulates that by 1991 it had notice that other computer companies were also aware of the facts in number 1 above and were investigating, including consideration of nontraditional keyboard design.

Plaintiffs suggested a stipulation as follows:

1) Prior to 1991 Digital had actual knowledge that highly credible physicians, scientists and human factors experts had expressed the belief that the occupational use of VDT equipment and keyboards might cause users to develop painful and even disabling disorders of the upper extremity which in some cases might require surgery.

2) Prior to 1991 other large and reputable manufacturers of VDT computer systems were aware of the same facts set forth in number 1 above and credited these views to the extent that they both investigated these health claims and undertook to design alternative keyboards which might address these health issues.

Plaintiffs' proposed stipulation is unacceptable because it so clearly suggests agreement on causation.

The jury was told by the court:

### *Addendum By The Court*—Continued

Digital stipulates that by 1991 it had notice that claims were being made that typing on a computer keyboard was causing adverse upper extremity health conditions. Digital also stipulates that by 1991 it had notice that other computer companies were also aware of those claims and were investigating them, including consideration of nontraditional keyboard designs.

Plaintiffs submitted substantial other evidence of notice prior to and after 1991. In view of the stipulation and other evidence, the videos and various internal memoranda of other computer keyboard manufacturers were excluded as cumulative.