NO. 07-00-0575-CR


NO. 07-00-0576-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



FEBRUARY 20, 2001



______________________________




OLLIE GRAY CHAMPION, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 179TH DISTRICT COURT OF HARRIS COUNTY;



NOS. 841383 AND 841382; HONORABLE MICHAEL WILKINSON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Ollie Gray Champion was convicted, after a plea of guilty, of two separate
counts of aggravated sexual assault on a child under the age of 14 and received two
sentences of 35 years confinement in the Institutional Division of the Department of
Criminal Justice and fines of $10,000. Appellant filed timely notices of appeal. 

 Although appellant was apparently represented by retained counsel at the trial court
level, his notices of appeal were given pro se, along with affidavits of indigency and
requests for the court to provide him with appointed counsel. Although the clerk's and
reporter's records have been received, we find nothing in the clerk's record to indicate that
appellate counsel has ever been appointed for appellant. Parenthetically, we also note
that appellant has indicated that he wishes to raise on appeal the ineffective assistance
of his trial counsel. 

 Whenever the court determines that a defendant charged with a felony or
misdemeanor punishable by imprisonment is indigent or that the interests of justice require
representation of a defendant in a criminal proceeding, the court shall appoint one or more
attorneys to defend him. Tex. Code Crim. Proc. Ann. § 26.04(a) (Vernon 1989). A
defendant who requests a determination of indigency and appointment of counsel is
required to complete a questionnaire concerning his financial resources and respond on
examination regarding his financial resources. Id. § 26.04(c). Because appellant has
requested a determination of indigency and appointment of counsel, we believe that these
appeals should be abated to the trial court for a hearing to determine whether appellant
needs to have counsel appointed for him.

 Accordingly, these appeals are abated and the causes remanded to the 179th
District Court of Harris County. Upon remand, the judge of the trial court shall cause
notice to be given and conduct a hearing to determine:

 1. Whether appellant desires to pursue his appeals.

 2. Whether appellant is presently indigent, and, if so, whether counsel
should be appointed to represent him. 


 3. If it be determined that an attorney should be appointed, the name,
address, and State Bar identification number of the attorney appointed.


 4. If appellant is not indigent, what steps need to be taken to ensure that
appellant will obtain the services of an attorney to pursue the appeals.


 5. If any other orders are necessary to ensure the proper and timely pursuit
of appellant's appeals.


In support of its determination, the trial court will prepare and file written findings of fact
and conclusions of law and cause them to be included in a supplemental clerk's record. 
The hearing proceedings shall be transcribed and included in a supplemental reporter's
record. The supplemental clerk's and reporter's records shall be submitted to the clerk of
this court no later than March 20, 2001.

 It is so ordered. 

 Per Curiam

Do not publish.



rial', sans-serif">______________________________


JUAN C. GUEVARA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-418,012; HONORABLE JIM BOB DARNELL, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
 
MEMORANDUM OPINION
 
          Following a plea of not guilty, Appellant, Juan C. Guevara, was convicted by a jury
of two counts of aggravated sexual assault.


 Punishment was assessed by the jury at
ninety-nine years confinement as to each count. The court ordered the sentences to run
concurrently. Presenting three issues, Appellant maintains (1) the trial court abused its
discretion in overruling his objections and admitting outcry witness testimony contrary to
the requirements of article 38.072 of the Texas Code of Criminal Procedure; (2) the trial
court abused its discretion in overruling his objections and admitting inadmissible hearsay
evidence as a prior inconsistent statement contrary to the requirements of Rule 613(a) of
the Texas Rules of Evidence; and (3) he was harmed by the trial court’s errors in admitting
inadmissible hearsay. As presented by the State, the sole issue is whether the trial court
abused its discretion by admitting a portion of the Children’s Advocacy Center (CAC)
videotape and the testimony of Andrea Chamberlain, the forensic interviewer. We affirm.
Background Facts
          The indictment in this case alleged that on two separate dates in 2005, Appellant did
intentionally and knowingly cause the mouth of Julian, a child who was then and there
younger than 14 years of age, and not the spouse of Appellant, to contact the sexual organ
of Appellant. Julian is the son of Appellant’s half-sister, Griselda. At the time of the
offense, Appellant was seventeen years old and Julian was four years old. 
          In 2005, Griselda and Julian lived in Plainview and they frequently visited her
mother, Natividad, in Lubbock. Natividad was Appellant’s step-mother and in 2005, he
lived with her, his half-brother, Flavio, and his half-sister’s child, Cesar.


 
          In the summer of 2007, while Griselda was at a conference in Dallas, Julian and his
younger sister, Leslie, were visiting their paternal grandmother, Manuella, in Petersburg. 
Julian was caught by his grandmother performing inappropriate sexual acts with one of his
young cousins. Julian explained to his grandmother that Appellant and Cesar had been
doing the same things to him. Manuella called Griselda to inform her of the abuse. 
Griselda drove to Petersburg to pick up her children and then drove to Lubbock to confront
Appellant and Cesar about the allegations. Thereafter, she, Julian, and Leslie returned to
their home in Midland, where she reported the abuse to the Midland Police Department. 
          The Midland Police Department arranged for Julian to be examined by a sexual
assault nurse examiner and for a forensic interview with the CAC. Chamberlain questioned
Julian about the abuse. The interview was videotaped. Nancy Compton, an investigator
with the Midland Police Department, advised the Lubbock Police Department that a sexual
assault involving a child, which had occurred in Lubbock County, had been reported. The
case was assigned to Lahoma Moran, a Juvenile Division Detective with the Lubbock
Police Department, for an investigation. 
          Julian made allegations that Appellant first molested him during the summer of 2005,
when he was only four years old. He also reported that the molestation occurred in the
summers of 2006 and 2007. According to Detective Moran’s testimony, after she
attempted to contact Appellant through a relative, he came to the police station to
voluntarily give a statement. After Miranda warnings were given and waivers were
obtained, Appellant confessed in writing that he first touched Julian in the summer of 2005.
He also admitted to multiple occurrences of his sexual organ making contact with Julian’s 
and Leslie’s mouths.


 During the investigation, Detective Moran also interviewed Griselda
and Manuella. Based on the findings from the investigation, Appellant was indicted on two
counts of intentionally and knowingly causing Julian’s mouth to contact his sexual organ. 
          Cori Armstead performed a sexual assault exam on Julian. The exam revealed that
Julian had healed abrasions to his anal area but Armstead was unable to determine the
cause of the injuries. During the exam, Julian claimed to have been anally penetrated
“hundreds” of times. However, there was no mention of oral contact. Armstead explained
the difficulty in obtaining evidence of oral abuse especially, as in this case, where outside
a ninety-six hour time frame there would be no fluids to collect.



          Chamberlain testified that she interviewed Julian for approximately one hour. He
was quiet, but willing to answer her questions truthfully. After she testified that Julian had
made a full “outcry” to her, the defense urged the following objections:
[y]our Honor, I’m going to object at this time. The State appears to be asking
for evidence or testimony of an outcry made to the CAC interviewer. This is
not an outcry situation. There has been no notice of any outcry, or intent to
use an outcry statement given under the rules. Also, Judge, under 38.071
of the Code of Criminal Procedure, testimony of child who is victim of
offense, I think they’re trying to come in under – under that, and in this case,
it’s clearly not admissible.
At this point in time, the Court has not made the proper determination that the
child is unavailable, under 13, things of that nature. So I’m going to object
on both grounds of outcry, that it’s an improper outcry, and under 38.071,
that it’s not admissible . . . . 
 
The trial court overruled the objections.


 Chamberlain then testified that she was
concerned that Julian suffered anal penetration and penile penetration of the mouth. 
Defense counsel’s objections to questions concerning the specifics of the abuse were
sustained. After explaining CAC procedures, Chamberlain answered affirmatively and
without objection that Julian’s answers during the interview were consistent with information
she had been provided by law enforcement.


 
          Following Chamberlain’s testimony, Julian was sworn in outside the jury’s presence.
He was also questioned by the trial court about telling the truth. After the jury returned, the
State commenced its questioning. The gist of Julian’s direct testimony was that Appellant
put his sexual organ into Julian’s mouth “lots of times,” while he would visit his maternal
grandmother in Lubbock. Julian testified that when Appellant would put his “wee-wee” in
his mouth, pee would come out and “it was gross.” The State also asked Julian what
Appellant was doing with his hands during the oral contact and Julian motioned that
Appellant was masturbating. The State followed up with “did he do that more than one
time?” After Julian responded, “[n]o,” the State admitted to asking a bad question and then
asked, “did it happen one time, two times, or more than one time, or more than that.” Julian
answered, “[m]ore than that.”
          During cross-examination, defense counsel asked the following leading question:
This question is only about [Appellant], okay. You said that [Appellant] put
– [Appellant] put his wee-wee in your mouth. That was only one time?
 
Julian answered, “[u]h-huh,” and defense counsel stated, “[y]es, that was only one time. 
Thank you.”
          Several questions later, defense counsel asked specific questions about Cesar
putting his “wee-wee” in Julian’s mouth and then concluded her examination by asking
Julian, “[a]nd [Appellant] did it one time; is that right”? Again, Julian answered “[u]h-huh.”
          During redirect examination, the State expressed confusion and asked Julian for
clarification with the following question:
[i]f we’re talking about when [Appellant] would put his wee-wee in your
mouth, you told [defense counsel] that it just happened one time. Was it one
time, two times, or more than that?
 
Julian answered, “[i]t was one time.” He remembered testifying earlier that it was more
than once but admitted he was confused and scared.
          Immediately following Julian’s testimony, the State expressed confusion and
requested permission to review the CAC videotape for redactions and asked to recall
Chamberlain to admit the redacted portion of the videotape for clarification of Julian’s
testimony. Defense counsel objected based on article 38.071 of the Code of Criminal
Procedure and maintained that the videotape was inadmissible. After a hearing outside the
jury’s presence, the trial court decided to allow the State to play a redacted version for the
jury amounting to less than one minute to clarify Julian’s testimony on the number of
occurrences of abuse. Defense counsel vehemently objected that the videotape was
inadmissible on various grounds, including hearsay and impeachment by the State of its
own witness. Appellant’s objections were overruled and Chamberlain was recalled to
authenticate the videotape. The redacted version of the videotape was played for the jury. 
The jury heard Chamberlain ask Julian how many times “that” happened and Julian’s
answer, “lots of times.” The jury also heard Chamberlain ask how many instances of anal
penetration occurred to which Julian also answered “lots of times.” 
           The defense lodged several hearsay objections to Chamberlain’s testimony on the
basis that Julian’s in-court testimony was not consistent with the contested out-of-court
statement Julian made to Chamberlain during her interview. The trial court overruled those
objections.
          During Chamberlain’s cross-examination, defense counsel suggested that Julian
may have exaggerated the number of occurrences. Chamberlain responded that children
do not tend to exaggerate about sexual abuse. During redirect examination, she testified
that she explored the different occurrences with Julian and concluded he had been abused
by Appellant “[l]ots of times.”
          After the State rested, defense counsel moved for an instructed verdict alleging the
State had failed to prove more than one instance of oral contact. The motion was denied.
          During closing arguments, defense counsel intimated that Appellant’s entire family
suffered from long-term systemic sexual abuse. He also suggested that Julian was caught
acting inappropriately with his cousin and that he wanted to shift the attention to Appellant. 
Defense counsel argued that Julian was confused and lying. During its closing argument,
the State relied heavily on Appellant’s confession.
          The jury found Appellant guilty of both counts of the indictment and assessed
punishment at ninety-nine years confinement as to each count. During sentencing, the
State moved for the sentences to run consecutively, which the trial court denied.
Contentions of the Parties
          The crux of Appellant’s argument stems from the trial court’s rulings admitting
Chamberlain’s testimony and the redacted videotape of Julian’s interview with her. 
Appellant argues the trial court’s rulings constituted an abuse of discretion which caused
him harm. According to Appellant, without the objected to evidence, the State could not
have proven he was guilty of both counts of the indictment alleging his sexual organ made
contact with Julian’s mouth. The State postulates there was no error in the admission of
the challenged evidence and, alternatively, that if the trial court erroneously admitted the
evidence, the error was harmless. 
Standard of Review
          We review a trial court’s decision to admit evidence over objection under an abuse
of discretion standard. See McCarty v. State, 257 S.W.3d 238, 239 (Tex.Crim.App. 2008). 
See also Winegarner v. State, 235 S.W.3d 787, 790 (Tex.Crim.App. 2007). As long as the
trial court’s decision was within the zone of reasonable disagreement and was correct
under any theory of law applicable to the case, it must be upheld. Winegarner, 235 S.W.3d
at 790 (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on
reh’g)). This is so because the trial court is usually in the best position to make the call on
whether certain evidence should be admitted. Winegarner, 235 S.W.3d at 790 (citing
Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). 
Analysis
          After Chamberlain testified that Julian made a full “outcry” to her, defense counsel
strenuously objected on the ground that Chamberlain was not a proper outcry witness. 
Counsel argued that the State had not given notice of an outcry witness as required by
article 38.072 of the Texas Code of Criminal Procedure and that Chamberlain’s testimony
was not admissible. 
          The State takes the position that Chamberlain’s testimony was not offered into
evidence as an outcry witness. According to the State, Appellant had notice that
Chamberlain was designated as an expert witness about sexual abuse and child abuse. 
The State argues that the challenged evidence was admissible under Rule 801(e)(1)(B) of
the Texas Rules of Evidence as a prior consistent statement offered to rebut an express
or implied charge against the declarant of recent fabrication. 
          Regarding the videotape, Appellant correctly maintains it does not qualify as an
outcry statement pursuant to article 38.072. See Divine v. State, 122 S.W.3d 414, 418
(Tex.App.–Texarkana 2003, pet. ref’d). However, the State contends that it did not offer
the videotape as evidence of an outcry. Just as with Chamberlain’s testimony, the State
argues that the videotape was offered as a prior consistent statement under Rule
801(e)(1)(B) of the Texas Rules of Evidence.
          The prior statement at issue is Julian’s statement to Chamberlain during their
interview that Appellant caused his sexual organ to make contact with Julian’s mouth “lots
of times.” The State urges this statement is consistent with Julian’s testimony while
Appellant categorizes the statement as a prior inconsistent statement.


 We agree with the
State that Julian’s prior statement to Chamberlain is a prior consistent statement that was
admissible under Rule 801(e)(1)(B) of the Texas Rules of Evidence.
          Per Rule 801(e) of the Texas Rules of Evidence, prior consistent statements that
meet the requirements of that rule are not hearsay. Specifically, the rule provides that a
prior statement is not hearsay if the declarant testifies at trial . . . and is subject to cross-examination concerning the statement, and the statement is:
consistent with the declarant’s testimony and is offered to rebut an express
or implied charge against the declarant of recent fabrication or improper
influence or motive . . . .
 
          The rule was analyzed in Hammons v. State, 239 S.W.3d 798 (Tex.Crim.App. 2007). 
Relying on Tome v. United States, 513 U.S. 150, 156-58, 115 S.Ct. 696, 130 L.Ed.2d 574
(1995), the Court set forth the four requirements which must be met in order for a prior
consistent statement to be admissible. Hammons, 239 S.W.3d at 804 n.12. Those
requirements are (1) the declarant must testify at trial and be subject to cross-examination;
(2) there must be an express or implied charge of recent fabrication or improper influence
or motive of the declarant’s testimony by the opponent; (3) the proponent must offer a prior
statement that is consistent with the declarant’s challenged in-court testimony; and (4) the
prior consistent statement must be made prior to the time that the supposed motive to
falsify arose. Id. at 804. 
          Regarding the first requirement, Julian, the declarant, testified at trial and was
subject to cross-examination. According to Hammons, the rule sets forth a minimal
foundation for the second requirement of an implied or express charge of fabrication or
improper motive. Id. There need only be a suggestion of fabrication to give the trial court
substantial discretion to admit a prior consistent statement under the rule. Id. at 805. In
assessing whether the cross-examination of a witness makes an implied charge of
fabrication or improper motive, the trial court considers not only the totality of the
questioning, but may also consider clues from voir dire, opening statements, and closing
statements. Id. at 808.


 
          During Julian’s cross-examination, defense counsel elicited multiple occurrences of
sexual acts committed against Julian by other perpetrators and minimized Appellant’s
conduct. During closing arguments, defense counsel suggested that Julian shifted the
blame to Appellant after his grandmother caught him acting inappropriately with one of his
cousins. The argument continued that Julian was confused and defense counsel
suggested Julian had lied. Given the minimal foundation required by Hammons, the
second requirement is satisfied.
          The State, as proponent of the prior statement, was charged with establishing that
the statement was consistent with Julian’s challenged in-court testimony. Defense counsel
sought to challenge Julian’s testimony that Appellant caused his sexual organ to contact
his mouth “lots of times.” Both Chamberlain’s testimony and the redacted videotape
confirm Julian’s prior in-court statement that Appellant engaged in the charged conduct
“lots of times.” Thus, the prior statement was consistent with Julian’s challenged in-court
testimony and the third requirement is satisfied.
          Finally, the prior statement must have been made at a time prior to the time the
supposed motive to falsify arose. A reading of the record does not disclose a clear motive
by Julian to falsify or fabricate the allegations against Appellant. Rather, during his
testimony about events that had occurred three years earlier when he was only four years
old, Julian expressed confusion recollecting the abuse. A challenge to a witness’s
credibility or memory may be sufficient to satisfy the requirements for admissibility of a prior
consistent statement. Id. at 805. Although there is no bright line rule between a general
challenge to memory or credibility and a suggestion of fabrication, the trial court determines
whether the tenor of cross-examination would lead a witness to fabricate. Id. Because the
statements made by Julian to Chamberlain and recorded on the videotape were made prior
to trial where Julian expressed confusion and difficulty recalling facts, the fourth
requirement for admission of a prior consistent statement has been met.
          We conclude that Chamberlain’s testimony and the redacted videotape were
admissible under Rule 801(e)(1)(B) of the Texas Rules of Evidence and that the trial court
did not abuse its discretion in admitting the evidence. A trial court’s ruling on the admission
of evidence will be upheld if it is reasonably supported by the record and is correct under
any theory of law applicable to the case. See Amador v. State, 275 S.W.3d 878, 878-79
(Tex.Crim.App. 2009). Once the evidence was properly before the jury, it was in the unique
position of evaluating credibility and demeanor of the witnesses and the weight to give
contradictory testimony. Johnson v. State, 23 S.W.3d 1, 8-9 (Tex.Crim.App. 2000). 
Consequently, Appellant’s three issues are overruled. 
Harm Analysis
          Assuming, arguendo, that the challenged evidence was improperly admitted, the
erroneous admission of evidence can be rendered harmless if other evidence at trial is
admitted without objection and it establishes the same facts the inadmissible evidence
sought to establish. Stoker v. State, 788 S.W.2d 1, 14 (Tex.Crim.App. 1989), cert. denied,
498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Crocker v. State, 573 S.W.2d 190,
201 (Tex.Crim.App. 1990). Appellant’s confession clearly stated that he caused Leslie and
Julian to put their mouths on his penis “about seven times total.” Even though the
confession was not specific as to whether that was seven times for each child, or one time
for one child and six times for the other, the jury was free to conclude from that statement
that he caused Julian’s mouth to contact his penis on more than one occasion. Therefore,
regardless of the trial court’s ruling, Appellant occasioned no reversible harm.
 

Conclusion
          Having concluded there was no error in the trial court’s decision to admit the
challenged evidence, we overrule Appellant’s issues. Accordingly, the trial court’s
judgment is affirmed.
                                                                           Patrick A. Pirtle

                                                                                 Justice

 

Do not publish.