# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00481-CR

**Jalen Veliz, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-18-300918, THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jalen Veliz of the offense of murder and assessed his punishment at 24 years' imprisonment. The district court rendered judgment on the verdict. In a single point of error on appeal, Veliz asserts that the district court abused its discretion in admitting evidence of an accomplice's statements to the police. We will affirm the judgment of conviction.

## BACKGROUND

The State charged Veliz with intentionally or knowingly causing the death of Isaac Morey by shooting him in the chest with a firearm during a robbery at an apartment residence in south Austin. At trial, the jury heard evidence that on the night of April 16, 2018, several individuals were gathered at the residence playing games, watching television, and smoking marijuana. One of the individuals, Jeremy Walker, received a text from an

acquaintance, Tommy Potter, asking if he could buy a quarter pound of marijuana. Walker agreed and proceeded to contact Morey, one of his marijuana suppliers. Morey arrived at the residence later that night with the marijuana, and Walker contacted Potter, informing him that the marijuana was available for sale.

Potter arrived at the residence with two friends, Ceaser Carlos and a man who Potter did not identify. Potter and his friends went into the kitchen with Morey to negotiate the sale of the marijuana, and Potter asked if anyone had a scale. Potter and at least one of his friends then left the apartment, purportedly to retrieve a scale from their vehicle.[1] Upon their return to the apartment, Potter was armed with a pistol and the unidentified man was armed with a rifle. They demanded that Morey give them the marijuana and grabbed it from him. Potter and his friends then ran out of the apartment, with one of the men shooting Morey in the chest on his way out. Morey died from the gunshot wound.

Five eyewitnesses to the robbery testified at trial. Of the five, only Walker identified Veliz in both a photo lineup and in court as the shooter. Another eyewitness identified Veliz in court as the man armed with the rifle but was unable to identify the shooter in the photo lineup. The third eyewitness testified that the man with the rifle was the shooter but was unable to identify him. The fourth eyewitness testified that he was unsure which of the armed men shot Morey. The fifth eyewitness testified that he thought the person with the pistol had shot Morey. However, ballistics analysis on the bullet recovered from Morey's body confirmed that Morey had been shot with a rifle.

---

[1] The eyewitnesses who testified at trial provided conflicting testimony as to whether just two or all three of the men left the apartment.

Potter, Carlos, and Veliz were arrested for the crime. Carlos and Veliz were charged with capital murder, murder, and aggravated robbery.[2] Prior to trial, Carlos made a deal with the State to plead guilty to the offense of aggravated robbery and to testify truthfully against Potter and Veliz in exchange for the State recommending a maximum sentence of 15 years' imprisonment with the possibility of deferred adjudication.

Carlos testified that on the night of the incident, he, Potter, and Veliz were smoking marijuana at Potter's apartment and wanted more, so they decided to steal marijuana from someone. Their plan was to arrange a buy with Walker, go to Walker's apartment and have Carlos pretend to be interested in purchasing the marijuana from him, and then have Potter and Veliz enter the apartment armed with weapons, steal the marijuana, and leave. Carlos recounted that when they arrived at the apartment, he knocked on the door and entered the apartment first, and Potter and Veliz entered shortly thereafter, unarmed. As Carlos haggled with Morey and Walker regarding the price and quantity of the marijuana, Potter and Veliz left the apartment, purportedly to retrieve a scale from their car. When they returned, Potter was armed with a pistol and Veliz was armed with a rifle. According to Carlos, Potter pointed his pistol at Morey's head and demanded that he give him the bag containing the marijuana. Potter then grabbed the bag from Morey, and he and Carlos ran out of the apartment to their car. Carlos testified that Veliz did not immediately follow them out and that he and Potter arrived at the car before Veliz. Carlos drove the car closer to the apartment to wait for Veliz and saw Veliz running out the door with the rifle. Veliz got in the car and the three men drove back to Potter's apartment. Carlos claimed that during the drive, Veliz told Carlos and Potter repeatedly that he had shot someone inside the apartment and that he thought he had killed the person.

---

[2] The record is unclear as to whether Potter faced the same charges as Carlos and Veliz.

Other evidence considered by the jury included the testimony of Detective Rogelio Sanchez of the Austin Police Department, who investigated the shooting. Over a hearsay objection by Veliz, Sanchez testified to statements regarding the offense that Carlos had made to him after his arrest but before his plea agreement with the State. These statements included that Veliz was armed with a rifle during the robbery and that Veliz had told Carlos that he shot the rifle while inside the apartment.

The jury found Veliz guilty of murder and the district court sentenced him to 24 years' imprisonment in accordance with the jury's verdict. This appeal followed.

## STANDARD OF REVIEW

"Trial court decisions to admit or exclude evidence will not be reversed absent an abuse of discretion." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). "Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the 'zone of reasonable disagreement.'" *Id.* (quoting *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007)). The trial court abuses its discretion in admitting or excluding evidence only "when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

## DISCUSSION

In his sole point of error on appeal, Veliz asserts that the district court abused its discretion in admitting the statements that Carlos made to Detective Sanchez. According to Veliz, the statements were inadmissible hearsay. The State argues in response that the

4

statements were not hearsay and were admissible as "prior consistent statements" of Carlos. *See* Tex. R. Evid. 801(e)(1)(B).

"Rule 801(e)(1)(B) gives substantive, non-hearsay status to prior consistent statements of a witness 'offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.'" *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007) (quoting Tex. R. Evid. 801(e)(1)(B)). Four requirements must be satisfied for a prior consistent statement to be admissible under the rule: (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent; (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Id*. at 804 (citing *Tome v. United States*, 513 U.S. 150, 156–58 (1995)).

"The rule sets forth a minimal foundation requirement of an implied or express charge of fabrication or improper motive." *Id*. "It is minimal. . . . [E]ven an attack upon the accuracy of the witness's memory might suffice to permit the introduction of a prior consistent statement," *id*. (citing 1 Charles T. McCormick, McCormick on Evidence § 47, at 178 n.18 (John W. Strong ed., 4th ed. 1992)), and "'there need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial,'" *id*. (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir.1991)). "The fact that 'there need be only a suggestion' of conscious alteration or fabrication gives the trial court substantial discretion to admit prior consistent statements under the rule." *Id*. at 804–05.

"However, the rule cannot be construed to permit the admission of what would otherwise be hearsay any time a witness's credibility or memory is challenged." *Id*. at 805. "There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate." *Id*. This determination is made by considering "the content, tone, and tenor of defense cross-examination. It either does or does not 'open the door' to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her testimony in some relevant respect." *Id*. at 808. "In deciding that question, the trial court must consider the totality of the cross-examination, not isolated portions or selected questions and answers." *Id*. "Courts may also consider clues from the voir dire, opening statements, and closing arguments." *Id*.; *see also Klein v. State*, 273 S.W.3d 297, 315–17 (Tex. Crim. App. 2008) (considering entire record when determining whether trial court abused its discretion in admitting prior consistent statements). Based on the totality of circumstances in the record and "giving deference to the trial judge's assessment of tone, tenor, and demeanor," the reviewing court should ask whether "a reasonable trial judge" could conclude "that the cross-examiner is mounting a charge of recent fabrication or improper motive." *Hammons*, 239 S.W.3d at 808–09. "If so, the trial judge does not abuse his discretion in admitting a prior consistent statement that was made before any such motive to fabricate arose." *Id*. at 809.

In this case, the record reflects that Veliz went beyond attacking Carlos's credibility generally and suggested throughout trial that Carlos's plea agreement with the State provided Carlos with a motive to fabricate his trial testimony. During his opening statement, defense counsel argued the following:

You're going to hear from Ceaser Carlos, who is charged exactly with the same way that Jalen is, and he's going to sit up here and tell you I cut a deal with the State. I was in tons and tons and tons of trouble, and I cut a deal with the State, that after this trial, the Judge can sentence me, but the sentence cannot exceed 15 years, and it can go all the way down to probation. He's going to testify; and you're going to ask yourselves, does he have a motive to testify in a way that helps the State.

Then, during his cross-examination of Carlos, defense counsel emphasized the plea agreement that Carlos made with the State. He began his cross-examination by asking Carlos questions pertaining to the charges that he faced and the punishment range for each offense, including a sentence of life imprisonment if he were convicted of capital murder, with no possibility of parole until he had served 40 years. *See* Tex. Gov't Code § 508.145(b); Tex. Penal Code § 12.31(b)(1). Defense counsel offered into evidence a copy of the State's indictment against Carlos, using an enlarged version of the indictment as a demonstrative aid for the jury. After questioning Carlos extensively as to the charges and the punishments that he faced, defense counsel then elicited the following testimony from Carlos:

Q.   You got a really good deal, didn't you?

A.   Yeah.

Q.   You got a hell of a deal, didn't you?

A.   Yeah.

Q.   Because for the last year of your life, you've been in the Travis County jail wondering, how in the world am I going to get out of this mess, right?

A.   Yeah.

7

> Q.   Then [counsel for Carlos] comes to you and says, I have an offer from the State, correct?
>
> A.   Yeah.
>
> Q.   They want you to testify against Jalen, right?
>
> A.   Yeah.
>
> Q.   If you testify the way they want you to, then they will give you an easy sentence, correct?
>
> A.   No.

Although Carlos denied that the agreement required him to "testify the way [the State] want[s]," the clear implication of defense counsel's line of questioning was that the plea agreement provided Carlos with a motive to fabricate his testimony. Moreover, defense counsel mentioned that the agreement provided Carlos with both a 15-year cap on punishment and the possibility of probation:

> Q.   Let's finish this up. Your deal with the State is that there is a cap of 15 years, which means you cannot go to jail, prison, for more than 15 years, correct?
>
> A.   Yeah.
>
> Q.   But the other part of this is, is that when you pled guilty—you stood before this judge and pled guilty, didn't you?
>
> A.   Yeah.

8

Q.  But the bottom part is, is when you pled guilty, they did not find you guilty—the judge did not find you guilty, correct?

A.  Correct.

Q.  And, so did you understand that without a finding of guilt that this judge could, in fact, give you what is known as deferred adjudication probation?

A.  Right.

Q.  Did you talk to your lawyer about that?

A.  Yes.

Q.  So, your lawyer says, hey, not only is it capped at 15, you could wind up walking out of here on probation, right?

A.  It's a possibility.

Q.  And, that's what he's going to ask the judge to do, right?

A.  Yeah.

Q.  You're going to ask the judge and say, hey, give me probation, right?

A.  Right.

Later during cross, defense counsel returned to the subject of the punishment that Carlos faced for the charged offenses and compared it to the punishment that Carlos faced if he committed perjury on the witness stand:

Q.  Did you understand that the offense of capital murder carries a minimum sentence of 40 years for somebody your age? Do you understand that?

9

A.      Yes, sir.

Q.      Did you understand that Count 2, the murder case[], carried five to life, correct?

A.      Yes, sir.

Q.      And, that's what you were facing, correct? And, the aggravated robbery to which you have pled guilty is five to life, right?

A.      Yeah.

Q.      So, let me ask you something. When [the prosecutor] told you that lying from that witness stand would be the offense of aggravated perjury, a third-degree felony that carries a two- to ten-year sentence, that is a lot less, a lot less than what you were looking at, correct?

A.      Correct.

Q.      So, you're not even worried about the aggravated perjury, are you?

A.      No.

Finally, defense counsel returned to the subject of the plea agreement during his closing statement:

And I want to ask you something, can you believe an 18-year old who is facing 40 years in prison who openly tells you "I would do whatever I have to do to get out of this mess," would not lie to you?

He was charged with capital murder. This offense right here, he was charged with it. And you know that the sentence on this case is a minimum of 40 years. He's going to be—he's going to spend 40 years in prison, will be 57 when he gets out of prison. Don't you think he would tell you anything in the world to get out of this? Throw somebody under the bus? Do you think Ceaser Carlos has the moral

10

compass to worry about a friend of his when he, Ceaser Carlos, is looking at 40 calendar years in prison? Of course not.

Look at the second count. This is murder. Gone, dismissed, off the table. Dismissed. This carried five to life. Off the table.

So what does he do? He pleads guilty to the third count, aggravated robbery. And you know what he says? "I got a deal with the State, folks, and it is a sweetheart deal. The most I can get on this is 15 years. It's a cap. And you know what else? The Judge did not find me guilty, so I am eligible for deferred adjudication probation. I expect to get it."

It is true that defense counsel also attacked Carlos's credibility generally and suggested that Carlos had a motive to falsify his story even before he made his plea agreement with the State. However, "in order to satisfy Rule 801(e)(1)(B) it is not necessary that a prior consistent statement have been made before *all* motives to fabricate arose." *Dowthitt v. State*, 931 S.W.2d 244, 264 (Tex. Crim. App. 1996). "The rule requires merely that the witness's prior consistent statement be offered 'to rebut *an* express or implied charge against him of recent fabrication or improper influence or motive.'" *Id*. Here, Veliz claimed that Carlos fabricated his testimony specifically because of his plea agreement with the State, and the district court would not have abused its discretion in admitting the evidence for that reason. As the district court observed on the record when it admitted the evidence, "I just think that clearly the whole tenor of the cross-examination was that he's testifying in accordance with pleasing the State, based on the agreement that he's made with the State." On this record, we cannot conclude that the district court's decision to admit Carlos's statements to Detective Sanchez under Rule 801(e)(1)(B) was outside the zone of reasonable disagreement. *See Klein*, 273 S.W.3d at 315–17; *Hammons*, 239 S.W.3d at 807–09; *Dowthitt*, 931 S.W.2d at 263–64.

We overrule Veliz's sole point of error.

11

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   January 27, 2021

Do Not Publish

12