COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



PHILLIP JOHN MANNING, §

Appellant, §

v. §

THE STATE OF TEXAS, §

Appellee. §

§

No. 08-23-00048-CR

Appeal from the

368th Judicial District Court

of Williamson County, Texas

(TC# 15-0954-K368)

## MEMORANDUM OPINION

A jury found Appellant Phillip John Manning guilty of two counts of Aggravated Assault Family Violence with a Deadly Weapon Causing Serious Bodily Injury. Appellant contends the trial court erred in admitting two out-of-court statements the complainant made prior to the second incident. Appellant further argues the evidence was legally insufficient to support his conviction on the second assault count given the State's lack of direct evidence. For the reasons set forth below, we affirm.[1]

---

[1]. This case was transferred from our sister court in Austin pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the Austin Court's precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with committing aggravated assault on his then-girlfriend, Theresa, on March 10, 2015, and April 18, 2015.[2]

### A.  The March 2015 incident

At trial, Theresa testified as follows. She and Appellant had been dating on-and-off from spring 2013 through the second incident alleged in the indictment. While they were living together in March 2015, Appellant became angry with her, grabbed her, and threw her to the ground, causing her to hit the back of her head on the concrete outside their home. Thereafter, Theresa had recurring headaches, was stuttering, and had trouble speaking, which caused her to seek medical treatment about a week later. The March 2015 hospital records indicated she had an acute subdural hematoma and bruising throughout her body in various stages of healing. At the hospital, Theresa supplied false information, saying her fall and injuries were attributable to her excessive drinking and vertigo. However, in truth, Appellant directed her to provide false information, and her injuries actually resulted from Appellant "beating [her] up."[3]

Neurosurgeon Robert Buchanan, who operated on Theresa after the April incident,[4] testified that he reviewed Theresa's March 2015 hospital records, including the images from her CT head scan, which revealed an acute subdural hematoma and multiple other brain bleeds in

---

[2] Appellant was also charged with a third count of continuous family violence against Theresa during a 12-month period, to include the two charged offenses. After the jury found Appellant guilty of counts one and two, the trial court granted the State's motion to dismiss count three on double jeopardy grounds.

[3] At trial, the State presented expert testimony on domestic abuse indicating that victims of domestic abuse often deny or minimize the abuse, in part as a "coping mechanism," as they do not want to believe or admit their loved one would intentionally hurt them.

[4] Dr. Buchanan did not treat her in March.

various stages of healing. Dr. Buchanan explained that because of its acute nature, he believed the subdural hematoma for which Theresa sought treatment in March had occurred within a 12-hour-period prior to the CT scan.

### B.  The April 2015 incident

Appellant and Theresa's next-door neighbor testified that while he was in his backyard on the evening of April 18, 2015, he witnessed what he believed was a "domestic assault" between Appellant and Theresa, prompting him to call 911. The neighbor saw Theresa on the ground "kind of curled into a ball," with Appellant bent over her, and Appellant's "arm going up and down" (although he did not actually see Appellant striking Theresa). When he yelled at Appellant to stop, Appellant and then Theresa told him to "mind [his] own business." He believed Theresa was trying to protect Appellant. In the 911 call, which was played for the jury, the neighbor reported seeing Appellant push Theresa's head to the ground. At trial, though, he had no independent recollection of such.

When police arrived, Theresa admitted to a verbal dispute but denied Appellant assaulted her; she informed the officers she had vertigo, which caused her to fall. Appellant, who was interviewed separately, informed the officers Theresa's fall was due to her drinking excessively, and he picked her up and carried her inside. Because the lead officer did not see signs of injury on Theresa's arms or neck and did not believe a physical disturbance had occurred, the officers left. According to the neighbor, after the police left, Appellant angrily confronted him about calling the police and threatened to shoot his dogs.

The next day, April 19, 2015, Jackie Roberts, who Theresa hired to help her with yard work, came to the house. After going in to use the restroom, she observed Theresa in her bed

unresponsive and told Appellant he needed to call an ambulance or she would call police. When Appellant failed to do so, Roberts left the house and reported the incident to her boyfriend, who called the police. First responders found Theresa in a coma and unresponsive, except to painful stimuli. After Theresa was placed in a hospital gown to be transported to a specialty hospital for treatment, the first responders observed bruises throughout Theresa's body in various stages of healing.

Dr. Buchanan testified that he operated on Theresa immediately upon her hospital admission, performing a trauma craniotomy to relieve the pressure on her brain, as he believed she was "on the verge of dying." He explained that Theresa had an acute brain bleed or "acute subdural hematoma." He also observed at least two other brain bleeds, including the one from March that had already healed and another one he believed occurred sometime thereafter, which was in a healing stage. Dr. Buchanan described the new hematoma in Theresa's brain as "huge," and upon operating, observed that "most of the right side of her brain was on the left side of her skull." Although Dr. Buchanan acknowledged that in general, hematomas can result from various causes, he explained that a brain bleed of that size is presumed to have been caused by "some sort of trauma to the head," noting it takes "quite a bit of velocity and force" to cause a subdural hematoma of that nature. He discounted the possibility that Theresa's injuries were caused by a fall, explaining that she did not suffer a skull fracture as is typically the case when a person hits their head in a fall.

C. **Events following the April incident**

Shortly after Theresa's admission to the hospital, a disturbance arose in the waiting area when Theresa's former boyfriend confronted Appellant, accusing him of causing Theresa's

4

injuries. The police were called to the scene, and after learning of an outcry of abuse, the police posted a guard outside Theresa's hospital room. Theresa remained isolated during the rest of her hospital stay, with only her family and friends allowed to see her.

Theresa testified that when she awoke from the coma, she did not recall anything leading up to the April incident and had no memory of what caused her injuries. She testified that following the April incident, she was forced to go on disability due to the lingering effects of her brain injury. Various other witnesses also testified to her impairments following the incident, which included memory issues, problems speaking and walking, periods of confusion, and feelings of depression and hopelessness.

### D. The prior consistent statements

In his opening statement, defense counsel suggested that while Theresa was isolated in the hospital, her family and friends planted the idea in her mind that Appellant caused her injuries, causing her to change her story. The State argued defense counsel's remarks constituted a "charge" that Theresa was fabricating her in-court testimony, justifying the admission of two prior out-of-court statements Theresa made on April 5, 2015.

The first statement was in a series of text messages in which Theresa complained to Appellant she was "tired of being hit." The State sought to introduce a screen shot of the messages while Theresa was testifying. Defense counsel objected on relevance and hearsay grounds, but the trial court agreed with the State that the evidence was relevant to the March incident and admissible as a prior consistent statement to rebut the defense counsel's fabrication charge.

The State next sought to introduce a statement Theresa made to her friend, Dianna Motley, by telephone indicating she did not have vertigo and Appellant caused her March injuries by

5

throwing her to the kitchen floor, causing her to hit her head. Once again, defense counsel objected on hearsay grounds, but the trial court agreed it was admissible as a prior consistent statement and allowed Motley to testify to her conversation with Theresa.

### E.  The jury's verdict

At the close of trial, the trial court instructed the jury on the elements of aggravated assault as charged in the indictment, which included the allegations that Appellant was in a dating relationship with Theresa and that he had used his hands or another unknown object as a deadly weapon during the course of the assaults. The jury found Appellant guilty on both counts and sentenced Appellant to 20 years in prison. This appeal followed.

## ADMISSION OF THE PRIOR CONSISTENT STATEMENTS

In his first two issues on appeal, Appellant contends the trial court erred in admitting the two statements Theresa made on April 5, 2015, arguing they constituted inadmissible hearsay, as neither met the requirements for admissibility as prior consistent statements. We disagree.

### A.  Applicable law and standard of review

Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing," which "a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. Rule 801 (d)(1)(2). A prior out-of-court statement is not considered hearsay when (1) the declarant testifies at trial and is subject to cross-examination about the statement, and (2) the statement "is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . . ." TEX. R. EVID. Rule 801 (e)(1)(B). Consistent with the United States Supreme Court's interpretation of the Federal Rules' counterpart of Rule

6

801, the Texas Court of Criminal Appeals imposes the following four requirements to admit a

prior consistent statement:

(1)      the declarant must testify at trial and be subject to cross-examination;

(2)      there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent;

(3)      the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and,

(4)      the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

*Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007) (citing *Tome v. United States*,

513 U.S. 150, 156–58 (1995)).

Rule 801 "sets forth a minimal foundation requirement of an implied or express charge of

fabrication or improper motive." *Id.* A charge of fabrication or improper motive need not be direct

but only a "suggestion that the witness consciously altered his testimony in order to permit the use

of earlier statements that are generally consistent with the testimony at trial." *Id*. at 804 (citing

*United States v. Casoni*, 950 F.2d 893, 904 (3d Cir.1991)). "[E]ven an attack upon the accuracy of

the witness's memory" might be considered an implied charge of fabrication or improper motive,

permitting the introduction of a prior consistent statement. *Id.*

A court may consider a variety of factors to determine if there has been an express or

implied charge of recent fabrication or improper motive. *Id.* at 804–05. Although a charge of

fabrication may come cross-examination questions, a court is not restricted to looking only to the

"specific wording of the questions asked." *Id.* at 799. A charge may be "subtly *implied* through

tone, tenor, and demeanor during the entirety of the cross-examination." *Id*. (emphasis in the

7

original). As such, the court should consider "whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate." *Id.* at 805.

Additionally, a court may look to other "clues," such as statements made by attorneys during voir dire, opening statements, closing arguments, and questions asked of other witnesses, to determine whether a party is mounting an implied charge of fabrication or improper motive. *Id.* at 808; *see also In re A.C.T.*, No. 04-09-00068-CV, 2010 WL 374392, at \*8–9 (Tex. App.—San Antonio Feb. 3, 2010, no pet.) (mem. op., not designated for publication) (finding an implied charge of fabrication of allegations of sexual assault from counsel's statements during opening remarks and questions asked of other witnesses regarding the possibility complainant had negative feelings toward defendant); *Alexander v. State*, No. 13-19-00259-CR, 2020 WL 4589750, at \*3 (Tex. App.—Corpus Christi Aug. 6, 2020, pet. ref'd) (mem. op., not designated for publication) (finding the defense raised a suggestion of "recent fabrication or improper influence or motive" during opening statement that complainant made up allegations of sexual assault "to fit in with friends and relatives who mentioned their abuse to her").

Thus, in determining the admissibility of a prior consistent statement, the dispositive question is whether—given the totality of the circumstances, including tone, tenor, and demeanor—a "reasonable trial judge" could conclude counsel was "mounting a charge of recent fabrication or improper motive" against the testifying witness. *See Hammons*, 239 S.W.3d at 808–09; *see also In re A.C.T.*, 2010 WL 374392, at \*7. However, the "rule cannot be construed to permit the admission of what would otherwise be hearsay any time a witness's credibility or memory is challenged," as adopting such a broad rule would turn virtually all "prior consistent statement[s] into non-hearsay." *Id.* at 805 (citing *Tome*, 513 U.S. at 157–58 ("Prior consistent

8

statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited.")).

Because there is "no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication," a trial court has "substantial discretion to admit prior consistent statements" under Rule 801. *Id.* at 805. Accordingly, we review the trial court's decision to admit Theresa's prior statements under Rule 801 for an abuse of discretion. And we will not intercede if the trial court's ruling was within the zone of reasonable disagreement. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002) (en banc).

### B. Analysis

Appellant does not deny that the first *Hammons* requirement was met for the admission of Theresa's prior statements, as Theresa testified at trial and was subject to cross-examination (even though Appellant chose not to cross-examine her). Appellant challenges the three remaining *Hammons* requirements. We examine each in turn.

#### 1. Defense counsel made a charge of fabrication relevant to Theresa's testimony.

During opening statements, defense counsel made remarks to the effect of Theresa's statements being a product of what friends, family and law enforcement suggested to her while she was isolated from Appellant during her April hospitalization. However, Appellant contends defense counsel's fabrication charge only related to the April incident, asserting defense counsel only made this argument as a "follow up" to the prosecutor's opening statement indicating Theresa would not be able to testify about what caused her to be hospitalized in April 2015 due to memory loss from her brain injury. According to Appellant, because defense counsel's fabrication charge

was limited to the April incident, the State was similarly limited to introducing only prior consistent statements made by Theresa with respect to that incident. And in turn, Appellant contends the prior consistent statements admitted at trial only related to the March incident, making them inadmissible to rebut defense counsel's limited charge of fabrication. We disagree.

First, although defense counsel began his opening statement by pointing out—as the prosecutor did—that Theresa could not recall what happened to her the night before her April hospital admission, his charge of fabrication was not limited to that incident. During his opening statement, defense counsel called the jury's attention to what Theresa said at the hospital following the March incident, when she blamed her injuries on her vertigo, admitted she drank excessively, and denied she was a domestic abuse victim. In addition, counsel addressed the night before Theresa was hospitalized in April, when she informed the officers who responded to the neighbor's 911 call that she had fallen due to vertigo and denied Appellant had "hurt" her. He asserted Theresa had consistently denied she was a victim of abuse and only made her abuse claim after she was "isolated" from Appellant and "surrounded by friends and family that were looking for somebody to blame."

Second, during cross-examination, defense counsel questioned both Motley and Theresa's former boyfriend concerning whether they had observed Theresa fall in the past, whether they believed Theresa suffered from vertigo or any other medical condition that might cause her to fall, and whether they believed she drank excessively.[5] Defense counsel questioned Dr. Buchanan and the paramedics who transported Theresa to the hospital in April if they believed Theresa could

---

[5] Both witnesses testified they did not believe Theresa suffered from vertigo, and they both averred that Theresa did not drink excessively and had not displayed any propensity to falling.

10

have fallen due to vertigo, excessive drinking, or the medications she was taking. And defense counsel asked Dr. Buchanan to review Theresa's March 2015 hospital records to confirm she had informed hospital staff during her March visit that she suffered from vertigo, drank excessively, and was not the victim of any domestic abuse.

Finally, in his closing arguments, defense counsel argued the State's theory turned on its claim that all of Theresa's previous statements were "lies" and that she "made all that up" to protect Appellant. Defense counsel then expressed his belief that the State's theory "sound[ed] awful suspect" and concluded that Theresa testified in court "to something that was completely wrong."

As such, the trial court could have reasonably concluded that defense counsel had mounted an implied or express fabrication charge against Theresa regarding her in-court testimony.

### 2. Theresa's prior statement was consistent with her challenged in-court testimony.

Appellant appears to concede that Theresa's in-court testimony—that she did not suffer from vertigo and that Appellant had abused her, causing her March injuries—was consistent with her prior out-of-court statements. However, Appellant contends he did not directly "challenge" Theresa's in-court testimony, given his choice to not cross-examine her at trial to test the veracity of her testimony. And he appears to contend a direct challenge of this nature is required to meet the third prong of the *Hammons* test. We disagree.

As explained above, a charge that a witness is fabricating her testimony may come from sources other than cross-examination, such as from remarks made by counsel during opening statements and closing arguments, as well as from the tone and tenor of questions asked of other witnesses. *See Hammons*, 239 S.W.3d at 808–09; *see also In re A.C.T.*, 2010 WL 374392, at *7;

11

*White v. State*, 256 S.W.3d 380, 383 (Tex. App.—San Antonio 2008, pet. ref'd). Here, defense counsel challenged the veracity of Theresa's in-court testimony by insinuating throughout the trial that Theresa had changed her story regarding the source of her March injuries due to pressure from her family and friends, and by expressly arguing in closing that Theresa's in-court testimony was simply "wrong." *See White v. State*, 256 S.W.3d at 383 (recognizing that a "subtly implied charge of recent fabrication may become vociferously express during closing argument where the sinister seed of innuendo sowed during cross-examination [can come] to full fruition").

Accordingly, the trial court could have reasonably concluded that Appellant did in fact challenge the veracity of Theresa's in-court testimony.

### 3. The prior statements were made before the supposed motive to fabricate arose.

Appellant contends the statements Theresa made to Motley during their April 5, 2015 telephone conversation were not made before Theresa's supposed motive to fabricate arose. According to Appellant, Theresa's motive to fabricate occurred in March of 2015, when she made her allegedly false reports to medical personnel at the hospital regarding the source of her injuries, and the telephone conversation took place after that time. Appellant's argument misstates the timing of when the supposed motive to fabricate arose.

According to Appellant's own theory, as articulated in opening statements, Theresa's supposed motive to fabricate arose after her April 19, 2015 brain surgery, when she was isolated in the hospital, giving her family and friends the opportunity to influence her to falsely accuse Appellant of abuse. And the statement Theresa made to Motley occurred at least two weeks before that.

12

Accordingly, because all four *Hammonds* requirements were met, we conclude the trial court did not abuse its discretion in admitting Theresa's two prior consistent statements.

We overrule Appellant's first and second issues.

## SUFFICIENCY OF THE EVIDENCE

In his third issue on appeal, Appellant contends the State's evidence was legally insufficient to support his conviction for the second count. Count two in the indictment alleged that on or about April 18, 2015, Appellant caused Theresa "serious bodily injury . . . by one or a combination of one or more of the following: (1) striking Theresa with the defendant's hand, hands or other object unknown to the Grand Jury, (2) by causing Theresa to strike an object unknown to the Grand Jury, or (3) by throwing Theresa against an object unknown to the Grand Jury," and that he "used or exhibited a deadly weapon, namely, the defendant's hand, hands or other object unknown to the Grand Jury, during the commission of the assault."[6] Appellant contends there was no direct evidence that he engaged in any of the three actions alleged in the indictment. He further argues there were other reasonable explanations for Theresa's injuries that absolved him of guilt, and therefore, no rational jury could have concluded that he committed the offense. We disagree.

### A. Standard of review and applicable law

The Fourteenth Amendment due process guarantee requires that every conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (establishing legal sufficiency under *Jackson v. Virginia* as the only standard for review of the evidence). In assessing

---

[6] As the Texas Court of Criminal Appeals has recognized, although a defendant's body parts cannot be considered deadly weapons *per se*, a defendant's hand can be considered a deadly weapon depending on the manner of its alleged use. *See Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). Appellant does not argue otherwise.

13

the legal sufficiency of the evidence to support a criminal conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (*quoting Jackson*, 443 U.S. at 319). In doing so, the jury may choose to believe or disbelieve any testimony. *Lancon v. State*, 253 S.W. 3d 699, 707 (Tex. Crim. App. 2008). The jury remains at liberty to believe "all, some, or none of a witness's testimony." *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319).

It is well established that direct evidence of the elements of an offense is not required to sustain a conviction; to the contrary, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara*, 152 S.W.3d at 49). *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (recognizing same). Thus, we may look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* (citing *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Each fact need

not "point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Id* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). However, while juries are permitted to draw multiple reasonable inferences from the evidence, whether it be direct or circumstantial, they "are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id.* at 15.

### B. Analysis

Appellant argues the evidence was legally insufficient to support his conviction for the alleged April 2015 offense primarily because there was no direct evidence that Appellant assaulted Theresa. In particular, he points out that Theresa could not recall any of the events causing the injuries leading to her April hospitalization. And the neighbor who witnessed what he believed was a domestic assault the evening before Theresa went to the hospital acknowledged that his view was partially obstructed and he did not actually see Appellant strike Theresa.

Despite the lack of direct evidence, there was sufficient circumstantial evidence from which the jury could have reasonably concluded Theresa's injuries resulted from Appellant assaulting her by any of the means alleged in the indictment. The neighbor testified he saw Theresa on the ground with Appellant bent over her and his "arms going up and down." During his 911 call, which was played for the jury, the neighbor informed the dispatcher he had seen Appellant pushing Theresa's head against the ground. Accordingly, a reasonable jury could have concluded Appellant did in fact either strike Theresa with his hands or otherwise cause her to "strike" against an unknown object, as alleged in the indictment.

Moreover, as the State points out, the evidence also suggests Appellant had the motive and

15

opportunity to continue assaulting Theresa after the police left. The evidence reflected Appellant was upset, threatening to shoot the neighbor's dog for calling the police. The evidence further suggested that Appellant and Theresa were the only two people in the house that evening, besides Appellant's elderly mother who suffered from dementia, giving Appellant the opportunity to continue to assault Theresa after the police left. While "motive is not by itself enough to establish guilt of a crime," particularly when coupled with opportunity, it can be a significant circumstance indicating guilt. *See Nisbett v. State*, 552 S.W.3d 244, 265 (Tex. Crim. App. 2018); *Colone v. State*, 573 S.W.3d 249, 267 (Tex. Crim. App. 2019) (recognizing motive can be a "significant circumstance indicating guilt").

Appellant nevertheless contends the jury could not have reasonably concluded he was to blame for Theresa's injuries, as the evidence suggested other causes of her injuries. He points out Dr. Buchanan's acknowledgment at trial that Theresa's medical conditions could have caused her to fall and hit her head. We find this argument unavailing for at least two reasons.

First, Dr. Buchanan testified that despite the possibility of alternative causes for Theresa's injuries, he did not believe that a fall could have caused the type of injury Theresa suffered, given the size of her hematoma and the fact that her skull was not fractured, as is typically the case when a person hits their head in a fall that causes such a large hematoma. Second, it is well-established that evidence is not rendered legally insufficient to support a defendant's conviction merely because the record contains evidence of other possible causes for a victim's injuries that might absolve the defendant of guilt. To the contrary, "[i]t is the State's burden to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Turro v.*

16

*State*, 867 S.W.2d 43, 47 (Tex. Crim. App.1993) (explaining that "the evidence is not rendered insufficient simply because appellant presented a different version of the events")); *see also Thompson v. State*, No. 03-20-00080-CR, 2021 WL 1418987, at *3 (Tex. App.—Austin Apr. 15, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018) "[l]egally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt, and the law requires no particular type of evidence.").

Because sufficient evidence supported a finding that Appellant assaulted Theresa in April 2015, causing her serious bodily injury as alleged in the indictment, a reasonable jury could have rejected Appellant's defensive theory that Theresa's injuries resulted from alternative causes. We therefore find the evidence legally sufficient to support Appellant's conviction.

We overrule Appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

LISA J. SOTO, Justice

November 21, 2023

Before Palafox, J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

Do Not Publish